# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

## ROBERT ZIK; APRIL ZIK; JAMES HEARON
### Appellants
### v.
## AMBER GASCHO, on behalf of herself and all others similarly situated, et al
### Plaintiffs-Appellees
### and
## GLOBAL FITNESS HOLDINGS, LLC
### Defendant-Appellee.

## APPELLEES AMBER GASCHO, ET AL., MERIT BRIEF

On Appeal from the United States District Court,
Southern District of Ohio, Eastern Division
(Case No. 2:11-cv-00436)

Thomas N. McCormick  (0075496)
tnmccormick@vorys.com
Kenneth J. Rubin  (0077819)
kjrubin@vorys.com
VORYS, SATER, SEYMOUR AND
PEASE LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Telephone:  (614) 464-6400
Facsimile:   (614) 464-6350

*Attorneys for Plaintiffs*

Gregory M. Travalio  (0000855)
gtravalio@isaacwiles.com
Mark H. Troutman  (0076390)
mtroutman@isaacwiles.com
ISAAC WILES BURKHOLDER &
TEETOR, LLP
Two Miranova Place, Suite 700
Columbus, Ohio 43215
Telephone: (614) 221-2121
Facsimile:   (614) 365-9516

*Attorneys for Plaintiffs*

## DISCLOSURE OF CORPORATION AFFILIATIONS

Pursuant to 6 Cir. R. 26.1, Plaintiffs-Appellees Amber Gascho, *et al.* make the following disclosures:

1.    Are these parties a subsidiary of a publicly owned corporation?  No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  No.

*/s/ Mark H. Troutman*
Mark H. Troutman  (0076390)
mtroutman@isaacwiles.com
ISAAC WILES BURKHOLDER &
TEETOR, LLP
Two Miranova Place, Suite 700
Columbus, Ohio 43215
Telephone: (614) 221-2121
Facsimile:   (614) 365-9516

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

Page

DISCLOSURE OF CORPORATION AFFILIATIONS .......................................... 1

TABLE OF AUTHORITIES ................................................................... iv

STATEMENT IN OPPOSITION TO ORAL ARGUMENT .................................. 1

JURISDICTIONAL STATEMENT ........................................................... 1

STATEMENT OF ISSUES ................................................................... 2

STANDARD OF REVIEW ................................................................... 3

STATEMENT OF THE CASE ................................................................ 4

    I.    The Gascho Litigation ......................................................... 4

    II.    The Settlement Agreement .................................................... 5

    III.    The Notice and Claims Process ............................................. 7

    IV.    Other Litigation against Global Fitness ................................... 8

        A.    The *Robins* Litigation ........................................... 8

        B.    The *Zik/Hearon* Litigation .................................... 10

        C.    The *Seeger* Settlement ......................................... 11

    V.    Comparison to Similar Gym Settlements .................................. 12

    VI.    The District Court Record .................................................. 14

    VII.    The Appellants' Interests are Adverse to the Class ..................... 15

SUMMARY OF ARGUMENT ................................................................ 17

    I.    This Class Action was properly certified and Class Counsel obtained significant value for the Class and each Subclass ............... 20

A.    Class Certification was appropriate based on the creation of various subclasses that adequately compensated each member based on damages suffered ........................................................................ 20

B.    This settlement provides significant value .............................. 23

C.    Plaintiff's claims under state Consumer Protection Statutes provided for the same relief ....................................... 23

II.    The Claims Made Process was fair, reasonable, and necessary ........ 25

A.    Because current data was not available, a claims-made settlement was necessary and appropriate ..................... 25

B.    Other courts have approved and endorsed similar claims procedures ................................................................... 28

III.    Appellants' other arguments are false and ignore the extensive record below ...................................................................... 29

A.    No collusion existed ............................................................... 29

B.    Continued litigation versus success on the merits was properly considered by the district court ......................... 30

C.    Opinions of Class Counsel and the Class Representatives were properly considered ............................. 31

D.    Reaction of the Class ............................................................. 31

IV.    The attorneys' fee award was appropriate, reasonable, and fully supported ......................................................................... 32

A.    The Lodestar Method is appropriate ....................................... 32

B.    Blackman's arguments are unsupported .................................. 38

1.    Consumer protection statutes expressly provide for the recovery of attorneys' fees and expenses ............... 39

2. The Sixth Circuit has endorsed the lodestar approach because it better accounts for the amount of work done ................................................................. 41

3. Cases relied on by the Appellants are distinguishable from, and inapplicable to, this Settlement ................................................................. 41

4. Blackman's "clear sailing" and "economic reality" arguments lack merit ..................................................... 47

C. While unnecessary, the common fund cross-check was properly applied ....................................................... 50

D. Rejection of Zik/Hearon's fee request was appropriate because the objections provided no class benefit .................... 52

CONCLUSION ................................................................................. 55

CERTIFICATE OF SERVICE ............................................................. 57

## CASES

*Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243 (7th Cir. 2014) ...................................................................40

*Bittner v. Tri-County Toyota*, 569 N.E.2d 464 (Ohio 1991 ....................................40

*Blessing v. Sirius XM Radio, Inc.,* 507 F. App'x 1 (2d Cir. 2012).........................47

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ............................................ 50, 51

*Bowling v. Pfizer*, 102 F.3d 777, 779 (6th Cir. 1996)................................................41

*Burden v. Selectquote Ins. Servs.*, Case No. C-10-05966 SBA, 2013 U.S. Dist. LEXIS 16977, (N.D. Cal. Feb. 5, 2013) .......................................................29

*Chehalem Phys. Therapy, Inc. v. Coventry Health Care, Inc.*, No. 3:09-CV-00320, 2014 U.S. Dist. LEXIS 122359 (D. Ore. Sept. 3, 2014) .........................51

*Clark Equip. Co. v. Int'l Union, Allied Indus. Workers*, 803 F.2d 878 (6th Cir. 1986 .................................................................................................................3

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007)...............................28

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012)..............................................43

*Driscoll v. George Wash. Univ.*, No. 12-cv-690, 2014 U.S. Dist. LEXIS 119616 (D.D.C. July 17, 2014) .............................................................................39

*Einhorn v. Ford Motor Co.*, 548 N.E.2d 933 (Ohio 1990).............................. 34, 39

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014).............................................43

*Farrar v. Hobby*, 506 U.S. 103 (1992) ...................................................................34

*Friedman v. 24-Hour Fitness USA*, Case No. CV 06-06282 AHM, 2013 U.S. Dist. LEXIS 145285 (C.D. Cal., 2010) ................................................... 13, 14, 28

*Gascho v. Global Fitness Holdings, LLC*, 863 F.Supp.2d 677 (S.D. Ohio 2012)....................................................................................................... 2, 53, 57

*Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402 (6th Cir. 2012)............ 47, 48

*Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992) ............38

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ..............................................................48

*In re Am. Med. Sys., Inc.*, 75 F. 3d 1069 (6th Cir. 1996)............................................2

*In re Apple Iphone 4 Prods. Liab. Litig.*, 2012 U.S. Dist. LEXIS 113876 .............28

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ............43

*In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013) ......................... 42, 43

*In re Prudential Ins. Co. of America Sales Practices Litig.*, 106 F. Supp. 2d
    721 (D.N.J. 2000) ...................................................................................................48

*In re: Educ. Testing Serv. Praxis Principles of Learning and Teaching
    Grades* 7-12, MDL No. 1643, 2006 U.S. Dist. LEXIS 83479 (E.D. La.
    Nov. 15, 2006 ......................................................................................................28

*Kiefer v. Moran Foods, LLC*, No. 12-CV-756, 2014 U.S. Dist. LEXIS
    106924, 3882504 (D. Conn. Aug. 5, 2014)........................................................51

*Kritzer v. Safeline Solutions, LLC*, No. 2:10-CV-0729, 2012 U.S. Dist.
    LEXIS 74994 (May 30, 2012, S.D. Ohio) ........................................... 28, 36, 47

*Laguna v. Coverall N. Am., Inc.,* 753 F.3d 918 (9th Cir. 2014) .............................47

*Lonardo v. Travelers Indem. Co., 706 F. Supp. 2d 766 (N.D. Ohio 2010)*..... passim

*Maher v. Gagne*, 448 U.S. 122 (1980)...................................................................34

*Marr v. Foy,* No. 1:07–cv-908, 2010 U.S. Dist. LEXIS 77925 (W.D. Mich.
    Aug.3, 2010).........................................................................................................38

*Martina v. L.A. Fitness*, Case No. 2:12-CV-02063; 2013 U.S. Dist. LEXIS
    145285 (D. N.J. 2013) ............................................................... 13, 14, 28

*Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423 (2nd Cir. 2007)...........50

*Milliron v. T-Mobile*, No. 08-4149, 2009 U.S. Dist. LEXIS 101201 (D. N.J.
    Sept. 10, 2009)....................................................................................................28

*Olden v. LaFarge Corp.*, 383 F.3d 495 (6th Cir. 2004) ....................................3, 54

*Pearson v. NBTY*, Case Nos. 14-1198, -1127, -1245, -1389, 2014 U.S. App. LEXIS 21874 (7th Cir., Nov. 19, 2014) ......................................... 45, 46

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010) .............................. 34, 37, 39

*Physicians of Winter Haven LLC v. Steris Corp.*, No. 1:10 CV 264, 2012 U.S. Dist. LEXIS 15581 (N.D. Ohio Feb. 6, 2012) ...........................................51

*Rawlings v. Prudential-Bache Props., Inc.,* 9 F.3d 513 (6th Cir. 1993) .... 33, 39, 41

*Redman v. Radioshack Corp.*, 768 F.3d 622 (7th Cir. Sept. 8, 2014) ......... 44, 45, 52

*Robins v. Global Fitness Holdings, LLC, 838 F.Supp.2d 631 (N.D. Ohio 2012)* ................................................................................................ passim

*Rossi v. Proctor & Gamble Co.*, 2013 U.S. Dist. LEXIS 143180 (D.N.J. Oct. 3, 2013) ................................................................................................48

*Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683 (S.D. Fla. 2014) .......28

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011) ....................7, 28

*Silver v. L.A. Fitness*, Case No. 10-cv-2326-MMB, 2013 U.S. Dist. LEXIS 140267 (E.D. Penn., 2013) .................................................... 12, 13, 14

*Spark v. MBNA Corp.*, 48 F. App'x 385 (3d Cir. 2002) ........................................28

*Staton v. Boeing*, 327 F.3d 938 (9th Cir. 2003) .....................................................48

*Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006) ........................................................................................................45

*Thompson v. Midwest Found. Independent Phys. Ass'n*, 124 F.R.D. 154 (S.D. Ohio 1988) ..................................................................................38

*United States v. Waters,* 158 F.3d 933 (6th Cir. 1998)..........................................38

*Van Horn,* No. 1:08-CV-605, 2010 U.S. Dist. LEXIS 42357 (S.D. Ohio 2010), *aff'd* 436 F. App'x 496 (6th Cir. 2011)............................................ passim

*Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) 40, 47, 50

*Wells v. New Cherokee Corp.*, 58 F.3d 233 (6th Cir. 1995)....................................32

*Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997) ..............50

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012)............................3

**STATUTES**

28 U.S.C. § 1332(d)(10) ................................................................2

28 U.S.C. § 1453 ..........................................................................2

Kentucky Rev. Stat. 367.912(1).................................................23

Kentucky Rev. Stat. 367.930(2).................................................34

Ohio Rev. Code § 1345.09(F)(2) ...............................................34

Ohio Rev. Code § 1345.44(C) ....................................................23

**RULES**

6 Cir. R. 30(G) ...........................................................................57

Fed. R. App. P. 32(a)(5)..............................................................56

Fed. R. App. P. 32(a)(6)..............................................................56

Fed. R. App. P. 32(a)(7)(B) ........................................................56

Fed. R. App. P. 32(a)(7)(C)........................................................56

Fed. R. Civ. P. 12(b)(6)................................................................8

Fed. R. Civ. P. 23 .................................................. 2, 17, 49, 51

Fed. R. Civ. P. 23(a)....................................................................2

Fed. R. Civ. P. 23(b)(3)...............................................................2

Fed. R. Civ. P. 23(e)(2)...............................................................3

Fed. R. Civ. P. 23(h) ...................................................................3

**TREATISES**

Conte, *Attorney Fee Awards* § 1.10 (3d ed.) (2014)................................................40

## STATEMENT IN OPPOSITION TO ORAL ARGUMENT

Appellants' requests for oral argument should be denied because all of the issues currently being appealed have been extensively briefed and argued, and because further delay should be avoided.

Appellants' arguments against this Settlement were briefed and argued multiple times to the district court, where they were considered and rejected. Appellants now rehash the same arguments, rely on the same cases, and make no effort to address or distinguish the district court's findings of fact or conclusions of law. Contrary to Appellants' assertion, the district court's decisions do not conflict with the laws of this, or any other Circuit.

Moreover, additional delay harms the Class. Class Members have been waiting for their settlement checks for almost one year. Therefore, Plaintiffs believe that oral argument is unnecessary and counter-productive.

## JURISDICTIONAL STATEMENT

Appellant Blackman suggests that the district court lacked jurisdiction and never properly ruled on issues pertaining to minimal diversity. *See* Blackman's Brief, Doc. No. 21, fn.1. This is incorrect.

The district court determined that the Complaint adequately pled the required diversity. "The Complaint alleges that the named Plaintiff, Amber Gascho, resides in Ohio, and that Defendant is a Kentucky limited liability

corporation. Thus, the minimal diversity required under the statute exists." *See Gascho v. Global Fitness Holdings, LLC*, 863 F.Supp.2d 677, 688 (S.D. Ohio 2012). Additionally, under CAFA, Blackman's argument regarding the interplay of an LLC and its members for purposes of diversity is wholly without merit. *See* 28 U.S.C. § 1332(d)(10) ("For purposes of this subsection and section 1453, an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized.").

Notwithstanding Blackman's meritless inquiry, this Court has jurisdiction because diversity exists, for all the reasons set forth in Zik/Hearon's Statement of Jurisdiction, and for all the reasons otherwise acknowledged by Blackman.

## STATEMENT OF ISSUES

1.     Did the district court abuse its discretion in determining that the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3) were satisfied in certifying the Class and Subclasses for settlement purposes? *See In re Am. Med. Sys., Inc.*, 75 F. 3d 1069, 1079 (6th Cir. 1996) ("The trial court has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23").

2.     Did the district court abuse its discretion in determining "that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned"?

*See Clark Equip. Co. v. Int'l Union, Allied Indus. Workers*, 803 F.2d 878, 880 (6th Cir. 1986*; see also* Fed. R. Civ. P. 23(e)(2).

3.      Did the district court abuse its discretion in determining that a reduced lodestar award was "reasonable" when Class Counsel provided a "significant monetary benefit" and "the results achieved are substantial"? *See* Fed. R. Civ. P. 23(h).

<u>**STANDARD OF REVIEW**</u>

A district court's certification of a class and approval of a class action settlement are reviewed for an "abuse of discretion." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 536 (6th Cir. 2012). Class certification is subject to "very limited" review and will be reversed only if a strong showing is made that the district court clearly abused its discretion. *Olden v. LaFarge Corp.*, 383 F.3d 495, 507 (6th Cir. 2004).

**STATEMENT OF THE CASE**

## I.    **The Gascho Litigation.**

Plaintiffs are former members of Urban Active Fitness, a health club chain formerly owned and operated by Defendant, Global Fitness Holdings, LLC ("Global Fitness").[1]  This class action was filed on April 13, 2011, in Ohio state court and subsequently removed.[2]  The lawsuit alleged breach of contract, unjust enrichment, and violations of state consumer protection statutes related to the sales, contracting, billing, and cancellation of gym and personal training contracts. Specifically, Plaintiffs alleged that Global Fitness did not comply with state law in the sales, servicing, and cancellation of its memberships; failed to adequately disclose fees and costs to its members; and adopted numerous cancellation policies that resulted in additional and improper charges.

After more than two years of litigation, on July 8, 2013, the parties had a full-day mediation with William Hartgering, Esq., a JAMS mediator from Chicago.

---

[1]  Approximately 18 months after this litigation commenced, Global Fitness sold substantially all of its assets to Sports and Fitness Clubs, LLC, doing business as LA Fitness.  Since that time, Global Fitness has not engaged in any business operations other than completing the sale and winding down its business.

[2]  A similar lawsuit was also filed by Class Counsel against Global Fitness in Kentucky State Court on May 13, 2011, captioned *Tartaglia v. Global Fitness Holdings, LLC*.  Upon settling all claims in both lawsuits, these lawsuits were combined.

That mediation, and post-mediation negotiations, resulted in the agreement that was presented to the district court for approval.

## II.  **The Settlement Agreement.**

Global Fitness pledged more than $17,000,000 in *cash*—not coupons, credits, or vouchers—to the Class.  All Class Members who filed a claim would receive $5, $25, $35, $45, $55, or $75, depending on Subclass membership. Global Fitness separately agreed to pay the Settlement Administrator's cost and fees of approximately $500,000.

The settlement asked the district court to certify one Class and three Subclasses:

- The "Class" includes all individuals who signed a gym membership or personal training contract between January 1, 2006, and October 26, 2012.  The Class has 605,735 Members and all Members who filed a Claim would receive $5 in addition to any other Claim Award.

- The "FIF Subclass" includes all Class Members who paid a $15 Facility Improvement Fee ("FIF") between April 1, 2009, and October 26, 2012.  The FIF Subclass has 300,017 Members and all Members who filed a Claim would receive $20 in addition to any other Claim Award.

- The "Gym Cancel Subclass" includes all Class Members who cancelled their gym membership contract between January 1, 2006, and October 26, 2012. The Gym Cancel Subclass has 323,518 Members and all Members who filed a Claim would receive $20 in addition to any other Claim Award.

- The "Personal Training Cancel Subclass" includes all Class Members who cancelled a personal training contract between

> January 1, 2006, and October 26, 2012. This Subclass has 50,038
> Members and all Members who filed a Claim will receive $30 in
> addition to any other Claim Award.

*See* Joint Motion for Final Approval, RE 132, Page ID #2446.

Almost 50,000 Class Members submitted claims totaling $1,593,240. *See* Report and Recommendation ("R&R"), RE 141, Page ID #2812. The average Claimant will recover **$31.99**, and the average claimant from the Gym Cancel Subclass will recover **$41.28**. *Id*.

Average monthly gym membership dues were $26.76, and the actual damages for virtually all Class Members ranged from $0 to $100. *See* R&R, RE 141, Page ID #2241-42 and 2844. Thus, the average Claimant will recover 120% of one month's dues and the average Gym Cancel Subclass Claimant will recover 154% of one month's dues.

The district court described these payments as "significant" and "substantial." *See* R&R, RE 141, Page ID #2844-45 ("[t]his is a significant recovery because it exceeds the $26.76 average monthly fee of a gym membership" …. "[t]his recovery is also substantial considering the bases of plaintiffs' claims."). *See also id.* at Page ID #2845, 2850, 2854-2855, 2869.

Last, after agreeing upon the Class relief, Global Fitness, in a separate negotiation, agreed to pay Class Counsel's attorneys' fees and costs up to $2.39

million.  This negotiated fee is significantly less than Class Counsel's actual lodestar.

## III.  **The Notice and Claims Process.**

The notice program was "robust" and every type of notice prominently displayed the Settlement website or provided a direct link so that Class Members were "one click away" from filing a claim online.  *See* Transcript of Final Fairness Hearing ("Transcript"), RE 139, Page ID #2705-06 (testimony by the Settlement Administrator, Jeffrey Dahl "Dahl").  This method is "modern," "grabs people's attention," "follows how people tend to consume media," and "get[s] robust filing rates."  *Id.  See also Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 591 (N.D. Ill. 2011) (the parties' use of a settlement website and the ability to submit a claim on-line indicates that the claims process was designed to encourage—not discourage—the filing of claims).

The claims-filing process was easy, user friendly, and took just minutes. The Class Member only had to (a) click the hyperlink in the email; (b) type in the settlement website's "url" from the postcard; or (c) request a form that could be sent via U.S. Mail.  Dahl described the ease of this process at length during the Fairness Hearing.  *See* Transcript, RE 139, Page ID #2706-10.  The Claim Form required only basic contact information (name, address, phone number, email), and, if applicable, checking box(es) indicating Subclass membership.  No proof or

documentation was needed. A copy of the claims form was reviewed and approved by the district court. *See* Joint Motion for Preliminary Approval, RE 97-2, Page ID #1526-27.

## IV. Other Litigation against Global Fitness.

Several other (and similar) class actions were filed against Global Fitness. A review of those cases further demonstrates the exceptional nature of this Settlement.

### A. The *Robins* Litigation.

In *Robins v. Global Fitness Holdings, LLC*, plaintiffs alleged similar breach of contract, Kentucky Health Spa Act ("KHSA"), Ohio Consumer Sales Practices Act ("OCSPA"), and Ohio Prepaid Entertainment Contract Act ("PECA") claims against Global Fitness. 838 F.Supp.2d 631 (N.D. Ohio 2012). Plaintiffs were represented by experienced and recognized consumer class action counsel,[3] and Global Fitness was represented by the same attorneys from Squire Patton Boggs LLP (fka Squire Sanders LLP) who negotiated this Settlement.

Global Fitness moved to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6) and the court agreed. *Id*. at 654. This dismissal is particularly significant because in addition to rejecting plaintiffs' contract claims, the court also dismissed

---

[3] *See* http://www.dworkenlaw.com/Attorneys/Perotti.html.

the Kentucky consumer claims, and the Ohio consumer claims. In dismissing the

KHSA claims, the court said:

> A review of these Plaintiffs' contracts shows that they
> comply with the statutory provisions and contain,
> verbatim, the quoted statutory language…. Because
> these Plaintiffs have not alleged facts showing that these
> contracts violate the Kentucky statute, Count Seven must
> be dismissed with prejudice.

*Id.* at 651. Likewise, in dismissing the OCSPA and PECA claims, the court said,

among other things:

> Plaintiffs have failed to allege individual claims against
> Global under the Acts because Global's conduct in
> charging post-cancellation and other fees was consistent
> with the executed contracts, and any oral representations
> to the contrary were precluded by the integration clauses
> in those contracts. Furthermore, the contracts contained,
> nearly verbatim, the statutory language for three-day
> cancellations and cancellations due to death, disability
> and relocation.

*Id.* at 649. At the time of this Settlement, Robins's appeal to this Court was being

briefed. *See Robins et al. v. Global Fitness Holdings, LLC*, Case No: 12-3231 (6th

Cir.). As noted in the R&R, "the viability of the bulk of plaintiffs' claims is called

into question by [*Robins*]…. These claims are further clouded by the pendency of

the appeal in *Robins* … which was being briefed at the time of settlement." *See*

R&R, RE 141, Page ID #2833.

Despite this negative authority, Class Counsel engaged in aggressive

discovery done by no one else, including: (1) ESI discovery involving the

collection and review of more than 350,000 emails and other documents; (2) third party discovery of Global Fitness's customer database vendors; (3) numerous third-party interviews and gathering declarations; and (4) moving to compel additional ESI and consumer data. *See* Plaintiffs' Motion for Enhancement Payments and Attorneys' Fees, RE 114, Page ID #1854-55. As a result of these efforts, Class Counsel distinguished its claims from *Robins* for purposes of Global Fitness's Motion to Dismiss, diminished *Robins'* negative impact, and effectively negotiated this valuable Settlement for the Class against the same defense counsel that prevailed in *Robins*.

### B.    The *Zik/Hearon* Litigation.

*Zik/Hearon* involved overlapping allegations with part of the Gym Cancel Subclass's claims. Specifically, *Zik/Hearon* focused on two cancellation policies: (i) the charging of one extra month's dues after cancellation, and (ii) the $10 cancellation fee. *See* Zik/Hearon Objections, RE 118, Page ID #1918.

These contract claims are not viable because they are the *same claims* that were alleged and dismissed in *Robins*. *See Robins,* 838 F. Supp.2d at 643-44 (Plaintiffs "were properly billed, per their contracts, for two more billing cycles (*i.e.*, December 2010 and January 2011)" and "the Membership Contracts expressly permitted [Global Fitness] to charge these fees to their accounts."). Likewise, *Zik/Hearon*'s ability to recover the $10 cancellation fee was equally

suspect because, beginning in late-2007/early-2008, all Global Fitness contracts contained a provision allowing them to charge a $10 cancellation fee. Global Fitness's documents prove that it did not charge this fee until more than one year later. *See* Plaintiffs' Response to Objections, RE 128, Page ID #2267. Thus, if the form contract is strictly interpreted as in *Robins*, a breach of contract claim related to this $10 fee will likely fail.[4]

Even if *Zik/Hearon* could get a class certified, survive summary judgment, succeed on the merits, and then prevail on appeal, the value to Class Members here is greater. The average *Zik/Hearon* class member's maximum recovery is $36.76 (one month's dues of $26.76, plus the $10 cancellation fee). Here, the average Gym Cancel Subclass Member will recover $41.28 (**$4.52 more** than a similar *Zik/Hearon* class member). *See* R&R, RE 141, Page ID #2812; Plaintiffs' Response to Objections, RE 128, Page ID #2267-68.

## C.    The *Seeger* Settlement.

Appellants make numerous references to the *Seeger* settlement and attempt to compare this Settlement to *Seeger*. These comparisons only further demonstrate the exceptional value provided here. In *Seeger* plaintiffs' alleged similar claims on behalf of a Kentucky class. *Seeger* settled, but the Kentucky court rejected the

---

[4] Plaintiffs' Response to Objections fully details how *Zik/Hearon*'s claims are the same as the claims in *Robins* and the same as the Gym Cancel Subclass here. *See*, RE 128, Page ID #2265-68.

settlement because it involved essentially worthless coupons. In exchange for providing the worthless coupons, *Seeger*'s counsel agreed, on behalf of the class, to give Global Fitness a broad release absolving it of *any* and *all* claims, including claims never alleged nor investigated. As shown below, comparison to *Seeger* confirms this Settlement's significant value:[5]

|  | *Seeger* | *Gascho* |
|---|---|---|
| **Notice** | Email **or** Postcard | Email **and** Postcard |
| **Class Member Benefit** | 30-Day Coupon | Cash Refund (between $5-$75, with an average of $31.99). |
| **Release** | General Release: Unlimited in time or scope. | Specific Release: Limited to class period and alleged claims. |
| **Approved Claims** | 1,444 | 49,808 |
| **Claim Rate** | 0.6% | 8.2% |
| **Payment to the Class** | $0.00 | $1,593,240.00 |

## V.    Comparison to Similar Gym Settlements.

Other class action settlements involving similar claims against health clubs also pale in comparison to the value of this Settlement. In *Silver v. L.A. Fitness*, Case No. 10-cv-2326-MMB, 2013 U.S. Dist. LEXIS 140267 (E.D. Penn., 2013)

---

[5] Supporting citations found in Plaintiff's Response to R&R Objections, RE 144, Page ID #2936-37.

(final approval granted September 27, 2013), class members alleged unlawful additional charges after cancellation and that they were subjected to misleading form contracts and other improper practices. Class members who *submitted a claim* were eligible to receive a 45-day free pass or 1/3 of one month's dues valued at approximately $15. *Id*. at 3.[6]

In *Martina v. L.A. Fitness*, Case No. 2:12-CV-02063; 2013 U.S. Dist. LEXIS 145285, *4-5 (D. N.J. 2013) (final approval granted October 8, 2013), class members alleged the same claims as in *Silver* and all members who *filed a claim* received a 45-day coupon and/or 1/3 of one month's dues valued at $11.67. *Id*. At Final Approval the total cash payments to the class was less than $8,000 (617 x $11.67). *Id.*

Last, in *Friedman v. 24-Hour Fitness USA*, Case No. CV 06-06282 AHM, 2013 U.S., Dist. LEXIS 145285 (C.D. Cal., 2010) (final approval granted on July 12, 2010) class members alleged that defendant charged additional dues after cancellation. Class Members who *submitted a claim* recovered $20 or a 3-month pass. *Id*. at 5.

---

[6] Class Members who submitted written proof of cancellation and records showing continued charges were eligible to receive additional cash payments; however, that court noted that the settlement was largely a "coupon" settlement and the monetary aspect was "not really significant in terms of dollars." *Id*. at 10.

Here, the Settlement is **cash only** and the average Allowed Claimant will be paid $31.99; a 213% increase over *Silver*, a 275% increase over *Martina*, and a 160% increase over *Friedman*. Moreover, because *Silver, Martina*, and *Friedman* all involved claims of additional charges after cancellation*,* comparison to the Gym Cancel Subclass in this case is more on point. The average Gym Cancel Subclass Member will be paid $41.28; a 275% increase over *Silver*, a 350% increase over *Martina*, and a 200% increase over *Friedman*.

## VI.    The District Court Record.

The district court determined that the Settlement provided "significant" and "substantial" value to the Class. This finding was not an abuse of discretion because before even attempting mediation, Plaintiffs and Global Fitness vigorously litigated this case for more than two years. During that time, the trial court ruled on no less than five substantive pretrial motions[7] and conducted twelve pre-trial conferences to resolve the frequent discovery disputes.[8] As noted by the district court, the "enormity" of discovery "necessitated significant [c]ourt involvement in

---

[7] See R&R, RE 141, Page ID #2831

[8] *See* Order, RE 56, Page ID #890-93; Order, RE 63, Page ID #1054-55; Order, RE 68, Page ID #1142-43; Order, RE 71, Page ID #1240-43; Order, RE 72, Page ID # 1244-45; Order, RE 75, Page ID #1274-75; Order, RE 77, Page ID #1285; Order, RE 78, Page ID #1286-87; Order, RE 79, Page ID #1288-89; Continued Preliminary Pretrial Order, RE 80, Page ID #1290-92; Order, RE 87, Page ID #1328; Minute Entry for proceedings held on 8/22/2013.

discovery related matters, as well as several extensions of the pretrial schedule." *See* R&R, RE 141, Page ID #2832.

Since the Settlement, the parties have spent another year on motions and other briefs related to the adequacy and fairness of the Settlement. The Magistrate Judge reviewed multiple rounds of briefing prior to the final fairness hearing; held a final fairness hearing which included live witness testimony and extensive oral argument (RE 139, Page ID #2680-2792); and then wrote a 79-page R&R that carefully analyzed and thoroughly rejected every one of Appellants' arguments (R&R, RE 141, Page ID #2799-2877). Appellants objected to the R&R, and those objections were again reviewed and denied by the Article III Judge (Opinion and Final Order, RE 146, Page ID #2996-3005).

Appellants now rehash those same arguments and claim that the district court ignored evidence and/or failed to consider specific arguments. These assertions are false. This Court's review of Appellants' arguments could begin, and end, with the R&R because it is thorough, well-reasoned, and each conclusion is firmly supported by the facts of this case and established case law. The district court did not abuse its discretion in approving the Settlement.

## VII. The Appellants' Interests are Adverse to the Class.

Appellants' interests are adverse to the Class. Joshua Blackman ("Blackman") is represented by the Center for Class Action Fairness ("CCAF").

While employed as a law clerk for Judge Boggs of this Court, Blackman signed a membership agreement on August 16, 2011, and made an initial payment of $69.80. Two days later, and pursuant to the three day cancellation provision, Blackman cancelled his membership and received a full and complete refund. *See* Defendant's Motion to Strike Objection, RE 125, Page ID #2122. Despite this full refund, Blackman will receive $25 under this Settlement. Indeed, Blackman has no claims to be released, no damages to be remedied, and thus lacks any legitimate rights that merit protection. The CCAF is using Blackman to push its political agenda, rather than seeking any benefit for the Class.

Likewise, the Zik/Hearon Appellants are adverse to the Class because they seek to overturn a Settlement that will provide Gym Cancel Subclass Members a guaranteed average recovery of $41.28. Zik/Hearon seeks rejection of this Settlement so that they can continue to prosecute their claims that directly overlap with the Gym Cancel Subclass, potentially overcome *Robins* and, at best, recover **$4.52 less** per class member.

Given these facts, it is Appellants—through this appeal—who are self-dealing. The district court did not abuse its discretion in rejecting these baseless arguments, and this Court should affirm.

# SUMMARY OF ARGUMENT

This Court should affirm the district court's Orders because this Settlement provides "significant" and "substantial" value to the Class, and because the district court's decisions were proper given the facts of this case. The district court analyzed each of the Appellants' arguments, and in a 79 page R&R and a 10 page Opinion and Final Order that thoroughly discussed the applicable law of this Circuit, rejected each one.

Appellants' recycled arguments should be rejected again because (i) Plaintiffs' claims, along with the structure and organization of the Settlement, fully comply with Fed. R. Civ. P. 23's requirements; (ii) the significant value provided to the Class is fair and adequate given the nature of Plaintiffs' claims; and (iii) the reduced lodestar award for Class Counsel is reasonable given the work performed and valued provided.

First, the Class and Subclasses were properly certified because the Class Representatives are typical of the Class/Subclass members they seek to represent. The claims of the Class/Subclass members arise from the same policies and practices of Global Fitness and are based on the same legal theories. Moreover, given the clear and objective criteria used to define each Class/Subclass, each member will be compensated based on the specific policies that caused damage to each specific Class/Subclass. Because common questions, common proof, and

common damages tie all of the Class/Subclass members together, the Class and all Subclasses easily meet the requirements of Fed. R. Civ. P. 23.

Second, this Settlement is fair and adequate because it provides "significant" and "substantial" value to the Class. All Class Members were entitled to recover between $5 and $75 to compensate them for actual damages ranging from $0 to $100 for virtually all class members. The average Class Member will recover $31.99 and the average Gym Cancel Subclass Member will recover $41.28. This Settlement eliminates all risk of an adverse judgment and the cash awards dwarf what was provided in *Robins* (zero recovery), *Seeger* (worthless coupons), and several other health club settlements alleging similar claims (coupons or cash payments of $11.67 to $20.00). Moreover, the Gym Cancel Subclass Members will recover **$4.52 more** under this Settlement than they could under *Zik/Hearon's* claims, even assuming success on the merits. Importantly, the availability of these cash payments was guaranteed with the completion of a simple user-friendly claim form available both online and in hard copy that took mere minutes to complete and required nothing more than your name and basic contact information.

Last, the district court's award of attorneys' fees and costs was reasonable—even modest—because it was based on a *reduced* lodestar. The lodestar method was proper because, among other things, Class Counsel achieved an exceptional result, Plaintiffs' claims contained fee-shifting provisions, the amount of work

necessary was great due to the complexity of the case and the skill of opposing counsel, and because Class Counsel's fee had no impact on the relief available to the Class as it was negotiated separately and not taken from a common fund. While these factors support a full, or even an enhanced lodestar award, Class Counsel agreed to a *reduced* lodestar payment to secure a comprehensive Settlement and provide the exceptional relief to the Class described above.

In advancing these appeals, Appellants ignore the facts of this case and their arguments are littered with inaccuracies and false statements. Moreover, Appellants' arguments lack legal support as evidenced by their disregard for the established law of this Circuit and reliance on cherry-picked statements from easily distinguishable cases. Simply put, no abuse of discretion exists and Appellants have not, and cannot, identity a single error of judgment by the district court. Therefore, the district court's Orders should be affirmed.

## ARGUMENT

The primary arguments advanced by both sets of Appellants are that the use of the claims-made settlement procedure renders this Settlement unfair and that Class Counsel's fee award was unreasonable. Zik/Hearon also claims that the Class/Subclasses were improperly certified for settlement purposes. This brief will first rebut the arguments related to class certification and the claims-made

Settlement. It will then conclude by addressing the arguments related to Class Counsel's fee award.

I.    **This Class Action was properly certified and Class Counsel obtained significant value for the Class and each Subclass.**

The district court did not abuse its discretion in certifying the Class and Subclasses and in finding that substantial value was provided to the Class. These same arguments were presented in Zik/Hearon's Objections and extensive argument was devoted to these topics at the Fairness Hearing. The district court then devoted almost **20 pages** to addressing and rejecting Zik/Hearons' arguments. *See* R&R, RE 141, Page ID #2817-29, 2842-46.

On appeal, Zik/Hearon makes absolutely no effort to address or distinguish the facts and law relied on by the district court and simply rehashes the same arguments. The district court's thorough rebuttal (*see id.*), only requires a brief response here.

A.    **Class Certification was appropriate based on the creation of subclasses that adequately compensated each Subclass Member based on damages suffered.**

Zik/Hearon's argument that the Settlement sweeps a wide range of claims into a single class is entirely false because this Settlement includes one Class and three Subclasses. Each Class/Subclass is based on easily defined, objective, and common criteria.

By definition every class member had a membership contract, and based on that common fact, is compensated for the common policies and procedures that violated states consumer sales practices acts. Likewise, every Gym Cancel Subclass member cancelled his/her memberships, and based on that common fact, is compensated for the common policies and procedures that resulted in additional monthly fees and/or a $10 cancellation fee. Every FIF Subclass Member was charged a $15 Facility Improvement Fee, and based on that common fact, is compensated for this alleged damage. Last, by definition, every Personal Training Cancel Subclass Member cancelled a personal training contact, and based on that common fact, is compensated for the additional fees related to that cancellation.

Simply put, "the claims of the Class Representatives arise from the same policies and practices of defendant that give rise to the claims of other class members and are based on the same legal theories." *See* R&R, RE 141, Page ID #2823. Moreover, disparities in individual damage calculations do not preclude class certification. *See id.*, Page ID #2822-2823. For these reasons, Zik/Hearons' argument that their claims are different is unavailing.

Zik/Hearon's argument is also belied by its own claims. Specifically, Zik/Hearon freely admits to seeking certification of "a simply-defined, contractually based class of the hundreds of thousands of members who cancelled their month to month memberships with [Global Fitness] from ***January 2, 1996***

through the ***present***," and after cancelling were charged membership dues 30 days after they cancelled and/or a $10.00 fee.  *See* Zik/Hearon Objections, RE 118, Page ID #1918 (emphasis added).

Here, the district court certified a subclass of the same cancelling members (*i.e.*, the Gym Cancel Subclass) that stretches a mere six years as opposed to 16 years.  *See* R&R, RE 141, Page ID #2819-20 (members of Zik/Hearon's purported class, who signed contracts between January 1, 2006, and October 26, 2012, are members of the Gym Cancel Subclass).

In other words, in opposing this Settlement Zik/Hearon claims that the Gym Cancel Subclass should not be certified because commonality, typicality and predominance do not exist for a six-year class.  Yet, in prosecuting its own claims, Zik/Hearon argues for certification of a single class of cancelling members with a temporal scope of more than 16 years.  This argument does not make any sense and it should be rejected. [9]

---

[9] Zik/Hearon also makes false assertions to obscure the typically, commonality, and predominance present in this case.  Zik/Hearon argues that, "the magistrate patently erred when she determined that the Zik Objectors' claims were the same as Plaintiff Lundberg's claims…. Mr. Lundberg **never** even cancelled his membership."  *See* Zik/Hearon Brief, Doc. No. 30, at 39-40 (emphasis in original).

This is not true.  Lundberg ***cancelled*** his membership and ***paid*** the $10 cancel fee on April 6, 2011, as evidenced by his signed and dated cancellation form that was attached to Plaintiff's Response to Objections to the R&R, RE 144-2, Page ID# 2976.

**B.** **This settlement provides significant value.**

Zik/Hearon also argues that this Settlement did not secure adequate compensation for the Class. As thoroughly discussed above, the Settlement is not only fair and adequate, but it provides a "significant" and "substantial" benefit to the Class. Nevertheless, if Zik/Hearon was unsatisfied with their individual recoveries, then they should have opted-out and pursued their individual claims. *See* R&R, RE 141, Page ID #2845; Opinion and Final Order, RE 146, Page ID #3004.

**C.** **Plaintiff's claims under state Consumer Protection Statutes provided for the same relief.**

Last, Zik/Hearon argues that this Settlement did not adequately compensate Kentucky Class Members for their claims under the KHSA because Ohio and Kentucky members received the same relief. Again, this argument ignores the facts and the law.

Both the KHSA and Ohio's PECA contain provisions allowing gym members to void or rescind their contracts. *Compare* KRS 367.912(1) *with* Ohio Rev. Code § 1345.44(C). Plaintiffs brought claims under these statutes and survived Defendant's Motions to Dismiss. Thus, the same damages were available to Ohio and Kentucky members. As the district court correctly noted, "the Zik Objectors first proposition is simply not accurate; both the KHSA and PECA contemplate rescission as a potential remedy." *See* R&R, RE 141, Page ID #2846.

As to the merits of these claims, both were alleged and dismissed in *Robins*. *See* R&R, RE 141, Page ID #2833 ("the viability of the bulk of plaintiffs' claims is called into question by [*Robins*].) Moreover, the district court said that "the likelihood of actually obtaining [rescission] on a class-wide basis is questionable in light of the dearth—indeed, the absence—of authority either interpreting or applying the rescission statues at issue." *See id.*, Page ID #2828 and #2846. The district court found that the development of the KHSA claims was adequate and that Class Counsel considered the likelihood of success and the available remedies in connection with the claim during settlement negotiations. *Id.*, Page ID #2846.

Zik/Hearon also argues that other differences in state consumer protection statues were not considered. Zik/Hearon points to Tennessee law which forbids the charging of a $10 cancellation fee and the $15 FIF. Zik/Hearon Brief, Doc. No. 30, at 35. The Settlement accounts for this issue. Global Fitness did not charge any of these fees in Tennessee, and thus members from Tennessee would not meet the FIF Subclass definition. Likewise, Tennessee residents who are members of the Gym Cancel Subclass may still recover the $20 payment to compensate for the other policies of Global Fitness that resulted in additional monthly dues.

In conclusion, and as set forth in the R&R, the district court's decision to certify the Class and the three Subclasses for settlement purposes was proper given

the facts of this case and the controlling law of this Circuit. Zik/Hearon does not address any of the cases relied on by the district court, much less identify a clear error of judgment. No abuse of discretion exists.

## II.    The Claims Made Process was fair, reasonable, and necessary.

Both appellants argue that the claims procedure makes this Settlement unfair and inadequate. These arguments fail under any standard of review, much less for an abuse of discretion, because: (a) Appellants did not produce any testimony or other proof to rebut Dahl's testimony that he has never issued direct payment when the class member data was as unreliable and outdated as it was here, and (b) Appellants have not cited a single case rejecting a valuable settlement because it required a simple one-page claim form.

### A.    Because current data was not available, a claims-made settlement was necessary and appropriate.

Class Members were identified through the name and address provided at the time of signing the gym membership contract (between January 1, 2006, and October 26, 2012). Subsequent to joining the gym, many Class Members moved, changed emails, changed names, and were otherwise not reachable via that information.[10] Notice was not sent until October 31, 2013, one year after the Class

---

[10] A large percentage of the 606,000 class members are young adults and recent college graduates who are more likely to move (and move more frequently), on average, than other age groups. *See* Transcript, RE 139, Page ID #2784 (argument of Global Fitness's counsel).

Period ended. Thus, each Class Member's contact information was between one and eight years old.

The records were further tainted because Global Fitness used four different electronic record management systems since 2006. The use of different systems, and the transfer of information between them, meant that Class Members' records were often incomplete and inaccurate. *See* Plaintiff's Response to Objections, RE 128, Page ID# 2258.

Nearly 25% of the Notice Postcards were returned as undeliverable, and despite additional research, 10% of the Postcards were never delivered to any address. *See* Declaration of Jeffrey Dahl, RE 132-3, Page ID #2483. More importantly, Dahl unequivocally testified that, "90.8 percent of the Postcard Notices were delivered, *but there is 'no way of definitively saying they actually reached the class member.'*" *See* R&R, RE 141, Page ID #2859 (*quoting Transcript,* RE 139, Page ID #2718) (emphasis added). So, despite a robust notice and postcard program, no one, including the Appellants, can definitively say that *any* "delivered" postcard was actually received by the Class Member that lived at that specific address at some point within the last 8 years.

This undeniable fact explains Dahl's additional testimony that direct mail settlements are rare and only occur when the data is reliable. Dahl has overseen over 3,000 settlements and all, save for 10 to 20, involved a claims process. R&R,

RE 141, Page ID #2857-59 (*citing* Transcript, RE 139, Page ID #2712). Of those 10-20 cases, all involved insurance or employment cases where the class member was a policy holder or an employee, meaning the data was current and reliable. *See* R&R, RE 141, Page ID #2858 (*citing* Transcript, RE 139, Page ID #2711); R&R, RE 141, Page ID #2859 ("[A]ll [class members] 'had some sort of current component to the data' that was known to be reliable, and ***none had data as out of date as [Global Fitness's] data.***" (*citing* Transcript, RE 139, Page ID #2711-12 (emphasis added))). Appellants provide ***nothing*** to counter Dahl's testimony; no contrary testimony, no applicable case law, and no relevant secondary authority.

Because of these data inaccuracies, Plaintiffs negotiated an open claims process under which ***any*** Class Member could file a claim even if he/she did not received direct notice. No claimant identification number was required; just your name (or former name) and basic contact information. As a result, hundreds of Class Members not in the records filed claims and became Claimants. *See* Second Supplemental Declaration of Jeffery Dahl, RE 140, Page ID #2797. Likewise, several thousand Class Members not appearing in Global Fitness's Subclass records were granted Subclass Membership and now await the recovery of more money than they would have received had Global Fitness simply mailed checks based on its data. *Id.* at ¶5, Page ID #2797. Thus, the Notice Program and open claims process utilized here was particularly well-suited and appropriate.

**B.** **Other courts have approved and endorsed similar claims procedures.**

Not only did the facts require an open and simple claims process, but Appellants do not support their position with any relevant authority. Appellants have not identified a single court decision rejecting a valuable settlement because it required class members to submit a short and easy claim form.[11]

In contrast, user-friendly claims procedures, like the one used here, are common in consumer class action settlements.[12] Moreover, federal courts have approved similar claim filing procedures in other health club settlements. *See, e.g., Martina*, 2013 U.S. Dist. LEXIS 145285, at *27; *Friedman*, 2010 U.S. Dist. LEXIS 143816, at *9.

---

[11] Appellants' argument is a widely rejected, boilerplate objection raised by professional objectors like the CCAF. Courts recognize that direct distribution of checks is often neither practical nor appropriate. *See Schulte v. Fifth Third Bank*, 805 F.Supp.2d 560, 594 (N.D. Ill. 2011) (noting that a claims process prevents checks from being mailed **to unverified and old addresses** and reduces undelivered mail and fraudulently cashed checks and concluding that "a direct-distribution of settlement benefits…is not a panacea") (*citing In re: Educ. Testing Serv. Praxis Principles of Learning and Teaching Grades* 7-12, MDL No. 1643, 2006 U.S. Dist. LEXIS 83479 (E.D. La. Nov. 15, 2006.

[12] *See, e.g., Lonardo*, 706 F. Supp at 766; *Kritzer v. Safeline Solutions, LLC*, No. 2:10-CV-0729, 2012 U.S. Dist. LEXIS 74994, **32 (May 30, 2012, S.D. Ohio); *In re Apple Iphone 4 Prods. Liab. Litig.*, 2012 U.S. Dist. LEXIS 113876, at *11; *Milliron v. T-Mobile*, No. 08-4149, 2009 U.S. Dist. LEXIS 101201, at *19 (D. N.J. Sept. 10, 2009); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 314 (W.D. Tex. 2007); *see also Spark v. MBNA Corp.*, 48 F. App'x 385, 390 (3d Cir. 2002) *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 696 (S.D. Fla. 2014).

A recent decision on this point is particularly instructive. *See Burden v. Selectquote Ins. Servs.*, Case No. C-10-05966 SBA, 2013 U.S. Dist. LEXIS 16977, (N.D. Cal. Feb. 5, 2013) (Final approval granted on August 1, 2013). In *Burden,* the court initially denied settlement approval and ordered supplemental briefing specifically on the propriety of a claims-made settlement in an *employee* wage and hour class action. Six weeks later, the court approved the claims process, specifically holding that (i) claims procedures are not inherently unfair; (ii) they are the result of arm-length negotiations; and (iii) the opportunity to submit a claim provides a benefit to the Class. *Id*. at *17-18. Thus, Appellants' arguments fail even absent the outdated contact information and the unreliable database.

The district court's decision was factually supported and was entirely consistent with class action settlement jurisprudence. Appellants have not, and cannot, even support their arguments; much less demonstrate a "clear error."

III. **Appellants' other arguments are false and ignore the extensive record below**.

Section III of Zik/Hearons' Brief and Section D of Blackman's Brief contain a laundry list of items that the district court allegedly failed to consider when approving the Settlement. These arguments fail.

A. **No collusion existed**.

Zik/Hearon argues that because Class Counsel objected to the measly *Seeger* settlement, they cannot seek approval of this, much more valuable Settlement.

Zik/Hearon also argues that collusion existed because Class Counsel continued to independently prosecute claims against Global Fitness and obtained this significant Settlement without Zik/Hearon's involvement. These arguments are without merit.

Class Counsel objected to the *Seeger* settlement because it provided no value to the class and it released claims that were never alleged nor investigated. Then, after the *Seeger* settlement was rejected, Class Counsel vigorously litigated Gascho's claims, acted in the best interests of the Class, and negotiated these substantial cash awards. These unsubstantiated claims of collusion are frivolous and the district court properly rejected them.

## B. Continued litigation versus success on the merits was properly considered by the district court.

The district court properly analyzed the "success on the merits" and "risks of continued litigation" factors. *See* R&R, RE 141, Page ID #2833-35. The district court highlighted a number of serious roadblocks to Plaintiffs' claims including the *Robins* decision; the pendency of Robins' appeal to the Sixth Circuit; and "various defenses" that presented financial risk to the Class, including the "dearth of judicial authority" related to Plaintiffs' damages claims. *See id.* Moreover, the district court found that this litigation was already lengthy, complex, and costly, and that continuing would "undoubtedly require years more of litigation and … will be both extensive and costly." *See id.*, Page ID #2835.

### C.    Opinions of Class Counsel and the Class Representatives were properly considered.

Zik/Hearon next appears to argue that Class Counsel and the Class Representatives do not genuinely support this Settlement.    This is wrong.  As set forth in the district court record, as argued at the Final Fairness Hearing, and as discussed herein, Class Counsel and the Class Representatives support this Settlement because each Class Members was provided a substantial cash payment of between $5 and $75 in exchange for actual damages of $0 to $100.  The cash payments exceed the cost of one month's dues and easily eclipse the value (or potential value) provided in *Seeger*, *Robins*, *Zik/Hearon* and other similar health club settlements.

### D.    Reaction of the Class.

Appellants' arguments related to the "reaction of the class" are incorrect. First, Blackman claims that the district court determined that this factor "suggested by itself that the Settlement was fair."  *See* Blackman Brief, Doc. No. 21, at 36. This statement is patently false.  Instead, the district court properly noted that as one of "several" factors, "a Court must also consider the reaction of the absent class members."  *See* R&R, RE 141, Page ID #2830 and #2836.

Second, the facts favor approval of the settlement.  Out of more than 600,000 class members, *zero* objections were filed by Class Members who legitimately believe that the Settlement is inadequate.  Instead, the only objectors

were the same four self-interested persons that filed this appeal. Additionally, only 90 class members opted-out. Thus, the district court did not abuse its discretion in finding the Class supported the settlement. *See* R&R, RE 141, Page ID #2836-37.

## IV. The attorneys' fee award was appropriate, reasonable, and fully supported.

Last, both appellants also challenge the award of attorneys' fees and costs. Neither Appellant's argument is correct, however, because they (a) ignore the methodology and factual determinations of the district court; (b) conflict with public policy and this Circuit's established law; and (c) calculate the common-fund cross-check using a methodology that this Circuit, other Circuits, and numerous trial courts have rejected because it conflicts with Supreme Court precedents.

### A. The Lodestar Method is appropriate.

District courts have "wide discretion" in using the lodestar or percentage of the common fund approach to determine class counsel's fee award. *See Wells v. New Cherokee Corp.*, 58 F.3d 233, 240 (6th Cir. 1995). While one method is frequently employed as a cross-check on the other, courts are "perfectly justified in awarding a fee based on the lodestar analysis alone." *Van Horn,* 436 F. App'x at 501. Courts should "select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Rawlings v. Prudential-Bache Props., Inc.,* 9 F.3d 513, 516 (6th Cir. 1993).

The district court used the lodestar method with a percentage of the fund cross-check. The court explained in great detail why the lodestar method was preferable given the facts and circumstances of this case. *See* R&R, RE 141, Page ID #2866-72. Appellants, with limited exception, entirely ignore this analysis. As set forth below, the district court's findings were appropriate and fully supported.

First, the district court determined that Class Counsel achieved an exceptional result. "Where, as here, the ***results achieved are substantial***, the interest in fairly compensating counsel for the amount of work done is great. Under the circumstances of this case, the lodestar method will best ensure that Class Counsel is fairly compensated for their time." *See* R&R, RE 141, Page ID #2869 (emphasis added).

On this point, Blackman cites a number of cases for the proposition that the results obtained must be considered along with the hours spent obtaining those results. *See* Blackman's Brief, Doc No. 21, at 33-34. We agree. Here, the amount of work required was great and the results achieved are "substantial" and "significant." The cases cited by Blackman fully support the fee award and none even remotely suggest that attorney's fees should be reduced as suggested by Blackman.

<u>Second</u>, many of Plaintiffs' claims involved fee shifting statutes. *See* KRS 367.930(2) and O.R.C. § 1345.09(F)(2).[13] Citing controlling Supreme Court precedent, the district court correctly concluded that the express purpose of a fee shifting statue is to "induce capable attorney[s] to undertake representation in litigation that may not otherwise be economically viable." *See* R&R, RE 141, Page ID #2868-69 (*citing Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)); *see also Einhorn v. Ford Motor Co.*, 548 N.E.2d 933, 935-36 (Ohio 1990). The district court explained saying:

> Given the purpose of fee shifting statutes and 'the goal of class actions — i.e., to provide a vehicle for collective action to pursue redress for tortious conduct that it is not feasible for an individual litigant to pursue,' *Lonardo*, 706 F.Supp. 2d at 795, there is a **substantial public interest** in compensating Class Counsel for the amount of work done in this action… Further, limiting the award to a percentage of the actual recovery by Allowed Claimants, as Blackman suggests **could dissuade counsel** from undertaking similar consumer class actions in the future.

R&R, RE 141, Page ID #2869 (emphasis added).

<u>Third</u>, the lodestar method was proper, "especially considering the complexity of this action and the professional skill of opposing counsel." *See* R&R, RE 141, Page ID #2869. Global Fitness vigorously defended this case

---

[13] Counsel is entitled to fees and costs pursuant to applicable fee-shifting provisions if a settlement provides "comparable relief" to the relief sought in the litigation. *See Farrar v. Hobby*, 506 U.S. 103, 111 (1992); *Maher v. Gagne*, 448 U.S. 122, 129 (1980).

hiring experienced and highly skilled attorneys from four prominent law firms: Jones Day; Squire Patton Boggs LLP (*fka* Squire Sanders); Bingham Greenbaum Doll, LLP; and Bailey Cavalieri, LLC.

Not surprisingly, the resolve of Defendant was bolstered by Squire Patton Boggs' success in *Robins,* and the defendant-friendly settlement negotiated in *Seeger.* Moreover, the district court was keenly aware of opposing counsel's skill and vigor based on the numerous pre-trial motions, frequent discovery disputes, and direct judicial involvement in more than twelve contested pretrial conferences. The court was well-informed as to the amount of work performed and the "enormity" of the discovery conducted. *See* R&R, RE 141, Page ID #2832.

Fourth, while acknowledging that the percentage method is preferred in *common fund cases*, the district court correctly found that this is not a common fund case because "the provision for attorneys' fees in the Settlement Agreement is independent of the award to the Class and Subclasses." *Id.* at 71, RE 141, Page ID #2869 (rejecting Blackman's assertions to the contrary). Here, no common fund exists. Global Fitness must make the negotiated payments to every Class/Subclass member, *regardless of the number of claims filed.* Indeed, the payment amounts are guaranteed under the Settlement. Independent of the "significant" payments to the Class, Global Fitness is obligated to pay the Claims Administrator and Class

Counsel. Thus, the payment of attorneys' fees has no impact on any Class Member's ability to recover or the amount of that recovery.

Fifth, Class Counsel prosecuted the case on a contingent fee basis and devoted substantial time and energy to the litigation with no guarantee of recovery. *See* R&R, RE 141, Page ID #2868-69*; see also Kritzer v. Safeline Solutions, LLC*, No. 2:10-CV-0729, 2012 U.S. Dist. LEXIS 74994, at *30 (May 30, 2012, S.D. Ohio) (noting that some courts consider the risk of non-recovery the most important factor in fee determination.)

Last, the lodestar approach was appropriate because the total attorney fee award was less than Class Counsel's actual lodestar amount.[14] After the conclusion of negotiations related to Class/Subclass relief, the parties began negotiations concerning Class Counsel's fees. The parties were initially unable to reach an agreement; however, Class Counsel recognized that significant Class benefits had been achieved. So, to ensure a comprehensive settlement and avoid further delaying the Class relief, Class Counsel agreed to limit its demand to the fees and costs already incurred. *See* Plaintiff's Motion for Enhancement Payments and Attorneys' Fees, RE 114, Page ID #1856-57. Specifically, Class Counsel

---

[14] At the time of the Final Fairness Hearing, February 13, 2014, Class Counsel's total lodestar value was just shy of $2.8 Million. *See* R&R, RE 141, Page ID # 2871. As of this brief's filing, the total lodestar value has risen to over $2.9 million.

agreed to forego payment for the time, costs, and efforts expended since September 2013. *Id.* During the past year considerable fees and costs have been incurred, and continue to be incurred, all of which are uncompensated but benefit the Class.

Class Counsel's agreement to take a reduced lodestar award makes a recent Northern District of Ohio case involving the CCAF instructive. In *Lonardo*, the court adopted the lodestar approach and awarded a 1.3 multiplier to plaintiffs' counsel. In doing so, the court rejected the CCAF's argument that counsel's fee should be reduced to a percentage of the amount actually paid to the class. *Lonardo*, 706 F.Supp. 2d at 789-92. Even more germane, however, is the CCAF's admission in subsequent briefing that "there is a 'strong presumption' that an **unenhanced** lodestar is a reasonable fee." *Lonardo v. Travelers Indem. Co.,* 706 F. Supp. 2d 766, 813 (N.D. Ohio 2010) (*citing Perdue v. Kenny A.*, 559 U.S. 542, 550 (2010)). Here, Class Counsel seeks a *reduced* lodestar amount despite overcoming *Robins* and providing an exceptional settlement for the Class.

The district court's application of the lodestar method was appropriate, well-supported, and entirely within its discretion given the facts and circumstances of this case. Because district courts are "perfectly justified in awarding a fee based on

the lodestar analysis alone," Appellants' arguments should be summarily rejected

without further consideration.[15]  *See Van Horn,* 436 F. App'x at 501.

## B.    <u>Blackman's arguments are unsupported.</u>

Blackman argues that the Settlement is *per se* unfair because the award to

Class Counsel is larger than the amount actually claimed by the Class.  *See, e.g*.,

Blackman Brief, Doc. No. 21, at 25.  In other words, Blackman seeks adoption of

---

[15] Blackman's argument that Class Counsel did not properly support its lodestar request was properly ignored by the district court.

<u>First</u>, the argument was waived because as stated by the Magistrate Judge, "despite vigorous objections to other aspects of the settlement, there has been no objection to the reasonableness of the hourly rates or the hours expended on the litigation." *See* R&R, RE 141, Page ID #2871-72.  "It is well established that a party may not raise an argument, advance a theory, or marshal evidence before a District Judge that was not fairly presented to the Magistrate Judge."  *Marr v. Foy,* No. 1:07–cv-908, 2010 U.S. Dist. LEXIS 77925, at *10-11 (W.D. Mich. Aug.3, 2010); *see also United States v. Waters,* 158 F.3d 933, 936 (6th Cir. 1998).

<u>Second</u>, the documents submitted by Class Counsel were more than sufficient to establish the reasonableness of the hours and rates billed.  *See* R&R, RE 141, Page ID #2870-71; and Plaintiff's Motion for an Award of Fees RE 114, Page ID #1854-55; McCormick Declaration ¶¶ 6-10, Page ID #1867-69; and Troutman Declaration ¶¶ 5-10, Page ID #1882-84.  Moreover, as previously noted, the district court was frequently involved in the litigation and possessed first-hand knowledge as to the work involved and the "enormity of that undertaking."  *See* R&R, RE 141, Page ID #2831-32.  Thus, the district court had sufficient facts and details to determine an appropriate lodestar fee award.  *See Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1208 (6th Cir. 1992) (holding that a particular form of proof for considering whether fees are reasonable is not required); *Thompson v. Midwest Found. Independent Phys. Ass'n,* 124 F.R.D. 154, 162 (S.D. Ohio 1988) ("The Court's ***active involvement*** in the supervision, management, and trial of this litigation during the past two years places the Court in a prime position to evaluate the amount and propriety of the attorney fees awarded.") (emphasis added).

an absolute rule that, regardless of the risks taken, work performed, and results obtained, an award of attorneys' fees can never exceed the amount of the money actually distributed to the class.

Blackman's "rule" should be rejected because it (i) is inconsistent with statutory fee-shifting provisions and public policy concerns; (ii) conflicts with the long held rule that district courts "be permitted to select the more appropriate method" given the "unique circumstances of the actual cases before them," *Rawlings*, 9 F.3d at 516; and (iii) lacks any precedential support.

### 1. *Consumer protection statutes expressly provide for the recovery of attorneys' fees and expenses.*

As noted above, Blackman's *per se* rule must be rejected because it is inconsistent with the statutory fee shifting provisions that exist in state consumer protection statutes. The express purpose of fee shifting statues is to induce capable attorneys to take cases that may not be otherwise economically viable; calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting. *Perdue*, 559 U.S. at 552; *Einhorn*, 548 N.E.2d at 935-36.

The recent decision of *Driscoll v. George Wash. Univ.,* No. 12-cv-690, 2014 U.S. Dist. LEXIS 119616, *5-6 (D.D.C. July 17, 2014), affirmed this important principle when evaluating class action settlements saying:

> [a]s the Second Circuit has explained, '[e]specially for claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages

> runs directly contrary to the purpose of fee-shifting statutes…. **The whole purpose of fee-shifting statutes is to generate attorneys' fees that are disproportionate to the plaintiff's recovery.'**

*Id.* at *10-11 (citations omitted) (emphasis added).[16] *See also Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014)(class counsel fee award of $1,147,698 compared to $397,426 in claims); *Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (approving class counsel's fees of $13 million compared to $6.5 million paid out to class members and defendant kept remainder of the fund).

Class Counsel is <u>not</u> suggesting that every class action settlement that involves fee shifting statutes should entitle the lawyers to all of their requested fees; such an absolute rule would be just as misguided as the one proposed by Blackman. However, when class counsel takes a contingent risk, diligently prosecutes an action, engages in significant discovery, overcomes negative authority (*i.e.*, *Robins*), and successfully negotiates a settlement that provides

---

[16] The Ohio Supreme Court has likewise said that attorneys' fees under the Ohio Consumer Sales Practices Act should not be dictated by the amount recovered so as to avoid frustrating the public policy favoring private enforcement consumer protection laws. *See Bittner v. Tri-County Toyota*, 569 N.E.2d 464, 466 (Ohio 1991. *See also* Conte, *Attorney Fee Awards* § 1.10 (3d ed.) (2014) ("statutory fees are payable to prevailing parties to encourage private enforcement of statutes and deter violations, and because the results obtained are often nonmonetary or modest recoveries, a formula for a reasonable statutory fee award based on a percentage of the recovery is not usually available to the courts.").

significant value to the class, they are entitled to be fairly compensated for the work performed and results obtained.

### 2. The Sixth Circuit has endorsed the lodestar approach because it better accounts for the amount of work done.

In addition to conflicting with the purpose of fee-shifting statutes, Blackman's *per se* rule also disregards the Sixth Circuit's long held instruction that courts "make sure that counsel is fairly compensated" and to "select the more appropriate method" given the "unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *See Rawlings*, 9 F.3d at 516; *Bowling v. Pfizer*, 102 F.3d 777, 779 (6th Cir. 1996); *Van Horn*, 436 Fed. Appx. at 498.

Blackman's *per se* rule would strip district courts of discretion and would inhibit their ability to "fairly compensate" counsel. The ramifications of such a *per se* rule are profound and Blackman offers no compelling reason why district courts should be denied the ability to fairly compensate counsel when significant time and expenses were required to successfully prosecute a class's claims.

### 3. Cases relied on by the Appellants are distinguishable from, and inapplicable to, this Settlement.

To support their positions, Appellants offer cherry-picked quotes, but no analysis, from five cases—likely because even a cursory review exposes these cases as entirely inapposite.

Appellants first trumpet *Dry Max* as significantly altering this Circuit's legal landscape. *See In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013). In truth, *Dry Max* stands for nothing more than the unobjectionable proposition that class counsel must provide more than "perfunctory" or "negligible" relief to justify a large fee award. The "relief" consisted of an injunction requiring that a "common sense" warning related to diaper safety be placed on the box, a $400,000 *cy pres* donation, and the *reinstatement* of a reimbursement program that allowed consumers to recover the cost of one box of diapers, but *only* if they could provide an original receipt and a UPC code from the box. *Id*. The Court properly questioned whether *anyone* saves UPCs and receipts for diapers, noted that this reimbursement program had already been offered by the defendant before class counsel was involved, and properly characterized the settlement value as "negligible." *Id.* at 718-19. In exchange for this "negligible" relief, class counsel sought almost $3 million in attorneys' fees despite engaging in no discovery (plaintiffs never even responded to Defendant's Motion to Dismiss).[17] Given these facts, it is not surprising that the settlement was rejected.

---

[17] The district court summarized it best saying, "the class counsel in [*Dry Max*] didn't do nearly the work of class counsel in this case at bar yet were awarded $2.72 million in fees. Further, the class members in [*Dry Max*] were only awarded injunctive relief and not significant monetary payments like in this case." Opinion and Final Order, RE 146, Page ID# 3000.

After *Dry Max*, Appellants turn to a series of cases outside the Circuit, all with facts equally distinguishable. For example, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 939-40 (9th Cir. 2011), the Court rejected the settlement because it provided negligible benefits, and *no* payments to the class, but counsel received a $850,000 fee award.

In *Dennis v. Kellogg Co.*, 697 F.3d 858, 867 (9th Cir. 2012), the Court rejected the settlement not because of an inappropriate fee award, but because the value of the settlement was not ascertainable. Indeed, the court never evaluated the fee award but remanded the case *solely* to determine the settlement's actual value. *Id.* at 868-69.

In *Eubank v. Pella Corp.*, 753 F.3d 718, 721-28 (7th Cir. 2014), the Seventh Circuit rejected the settlement as "inequitable - even scandalous" because "almost every danger sign in a class action settlement that our court and other courts have warned district judges to be on the lookout for was present in this case." First, class counsel was allowed to recover his fee award of $11 million while the class's claims were left contingent and unresolved. *Id*. at 723. Second, class counsel was being sued for misappropriating assets from his former firm, was suspended from practicing law for repeated misconduct, and the court openly questioned whether he "may have been desperate to obtain a large attorney's fee in this case before his financial roof fell in on him." *Id*. at 722. Third, the trial judge approved the

settlement before the deadline to file claims had passed, made no effort to quantify the value of the settlement or how many claims would likely be filed, and his approval of the settlement was "squeezed into two two-page orders … that ignore virtually all the objections to the settlement." *Id.* at 723. Fourth, class counsel agreed to a convoluted claims process that required a 12-page claim form, "a slew of arcane data," and was "so complicated that Pella could reject many of them on the ground that the claimant had not filled out the form completely and correctly." *Id.* at 725-26. Last, the court rejected the valuation of the settlement which had been placed at $90 million finding, "[t]he claims sought in the aggregate less than $1.5 million and were likely to be worth even less because Pella would be almost certain to prevail in some, maybe most, of the arbitration proceedings." *Id*. at 726.

Then, in *Redman v. Radioshack Corp.*, 768 F.3d 622 (7th Cir. Sept. 8, 2014), the Seventh Circuit rejected the settlement because it was coupon only, and no attempt was made to actually value the coupons being provided. The opinion is detailed and cites numerous ways in which a $10 coupon is not really worth $10, but instead is an effective marketing tool for defendants. *Id.* at 631-633, 635-637. Because *Redman* was a coupon only settlement, the court struggled with application of CAFA's statutory limitations on attorney's fees in coupon

settlements.[18]  *Id.* at 633.  Most damaging, however, was the court's determination that class counsel seriously undervalued plaintiffs' claims because while the claims were likely to succeed, class counsel settled for a mere 10 cents on the dollar (assuming full value of the $10 coupons - a proposition the court had already rejected.)  *Id.* at 638-639.  Despite "the **meagerness** of the settlement value to the class," class counsel sought a $1 million fee award, which equaled a **1.25 lodestar multiplier**.  *Id.* at 8 (emphasis added).

Last, Blackman will argue that another recent decision from the Seventh Circuit, *Pearson v. NBTY*, Case Nos. 14-1198, -1127, -1245, -1389, 2014 U.S. App. LEXIS 21874 (7th Cir., Nov. 19, 2014) is relevant to this case.  It is not.

In *Pearson*, the court rejected the settlement because the parties structured it "with an eye toward discouraging the filing of claims."  *Id*. at 13.  To receive a check of $3.00, claimants had to complete a claim form with cash register receipts or other documentation indicating the date and place of purchase of glucosamine supplements.  *Id.* at 13-15.  This intensive claims process, all for an award of

---

[18] Obviously, the cash only Settlement presented here poses none of the same valuation issues.  Blackman's additional cases involve coupons or a lack of analysis regarding the fairness of a settlement, and they no more apply to the parties' settlement than *Redman*.  *See e.g. Cf. Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006) (remanding settlement for further analysis regarding the fairness of payments to individual class members, including coupon elements, because there was a lack of analysis by the trial court regarding how the particular compensation was fair).

$3.00, resulted in a claims rate of 0.25%. *Id.* In rejecting this overly burdensome process the court actually endorsed the process used here saying, "given the low ceiling on the amount of money … a sworn statement would be sufficient documentation without requiring receipts or other business records likely to have been discarded." *Id.* at 15.

Moreover, unlike this case, the attorney fee award was calculated using the common fund approach. Class Counsel argued that the fund was properly valued at $20.2 million, however, because of a number of factors that do <u>not</u> exist here such as an invalid *cy pres* component and injunctive relief that actually benefitted the defendant more than the class, the court rejected this claimed value. *Id.* at 16-22. Based on this alleged $20.2 million common fund value, class counsel asked the district court to award fees of $4.5 million. *Id.* at 9-10. Using a lodestar cross-check, this equaled **$1,254** per hour for attorneys <u>and</u> paralegal time. *Id.* The district court did not award this amount, but did grant an award of $1.93 million or **$538** per hour. *Id.*

Here, Class Counsel seeks a lodestar award that as of one year ago, December 2013, equaled <u>**$275**</u> per hour. *See* Plaintiff's Motion for Enhancement Payments and Attorneys' Fees, RE 114, Page ID #1856. Given the amount of uncompensated work performed since then, that hourly rate is significantly lower

today.  Thus, like all of the other cases relied on by Blackman, *Pearson* is easily distinguishable.

**4.    *Blackman's "clear sailing" and "economic reality" arguments lack merit.***

Blackman also asserts that the "clear sailing" provision[19] and segregation of funds demonstrates collusion.  Blackman Brief, Doc. No. 21, at 17-18.  These arguments are inconsistent with the law and the facts.

First, Blackman's clear sailing argument is entirely based on the erroneous factual assumption that negotiations concerning attorneys' fees affected the relief available to the class.  Blackman's unsupported allegation is belied by the "significant" and "substantial" recovery negotiated for the class (a finding that Blackman does not, and cannot, dispute), the structure of the settlement that allows each class member to recover the negotiated amount regardless of the award of attorneys' fees, and the district court's findings that Class Counsel negotiated

---

[19] A "clear sailing agreement" is an agreement by defense counsel not to contest class counsel's fees up to a certain amount.  Simply put, it is a settlement on fees rather than additional litigation.  These agreements are normal, encouraged as a means of avoiding further litigation, and consistently upheld.  *See Gooch*, 672 F.3d at 425, *Kritzer v. Safeline Solutions, LLC*, No. 2:10-CV-0729, 2012 U.S. Dist. LEXIS 74994 (May 30, 2012, S.D. Ohio); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766 (N.D. Ohio 2010); *Blessing v. Sirius XM Radio, Inc.*, 507 F. App'x 1, 4 (2d Cir. 2012); *Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 925 (9th Cir. 2014); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1300 (11th Cir. 1999).

payment of attorneys' fees only after reaching agreement on Class relief. *See* R&R, RE 141, Page ID #1850.

Second, when the relief awarded to the class is "significant" and "substantial," then the presence of a clear sailing agreement is not only common and irrelevant, **but it is encouraged**. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee."); *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402 (6th Cir. 2012) ("not every 'clear sailing' provision demonstrates collusion").[20]

As noted by the district court, "a clear sailing provision could just as easily be included for purposes of finality and risk avoidance, i.e., 'because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged.'" *See* R&R, RE 141, Page ID #2849 (*citing Gooch*, 672 F.3d at 425). Importantly, to finalize the Settlement and to make the substantial relief available to the Class on an expedited basis, Class Counsel agreed to a *reduced* lodestar despite the presence of statutory fee shifting provisions.

---

[20] Many courts have determined that fee agreements, negotiated after the class relief was finalized and granting fees separate from the class recovery, are entitled to heightened deference. *See, e.g., Staton v. Boeing*, 327 F.3d 938, 964 (9th Cir. 2003); *Rossi v. Proctor & Gamble Co.*, 2013 U.S. Dist. LEXIS 143180, at *27-28 (D.N.J. Oct. 3, 2013); *In re Prudential Ins. Co. of America Sales Practices Litig.*, 106 F. Supp. 2d 721, 722 n.1 (D.N.J. 2000).

Last, Blackman's "economic actors" argument is nothing more than a common sense observation reflecting the risk versus reward analysis that every litigant performs when contemplating settlement. Attorneys' fees are <u>not</u> a surprise to litigants, especially when fee shifting statutes are implicated. When parties agree to litigate fees rather than compromise on a maximum number, the defendant's *ex ante* calculations prior to and during the settlement process are precisely the same as when the parties abstain from discussing fees until after class relief is finalized.

Class actions are unique, so Fed. R. Civ. P. 23 instructs courts to review all class action settlements and determine that the value provided to the Class is fair, reasonable, and adequate, and to insure that the settlement process was not infected or undermined. Here, the district court determined that the value was "significant" and "substantial," and that Class Counsel negotiated attorneys' fees only after the Class's relief was finalized. *See* R&R, RE 141, Page ID #1850. Blackman has not, and cannot, argue that the Settlements value is inadequate, and nor has he offered any support for his baseless allegations of collusion. Thus, Blackman's arguments are <u>not</u> grounded in economics, the facts of this case, or the law of this Circuit, but instead rely on a misplaced ideology or political agenda.

**C.** **While unnecessary, the common fund cross-check was properly applied.**

Lacking any sound arguments rebutting the lodestar award, the bulk of Appellants' arguments focus on the "common fund cross check." As explained above, application of the cross check is optional, and the failure to perform a cross-check is not an abuse of discretion.

Even assuming the cross check was required, Appellants' arguments are unsupported; indeed, this Court recently rejected the same argument. *See Van Horn*, No. 1:08-CV-605, 2010 U.S. Dist. LEXIS 42357 (S.D. Ohio Apr. 30, 2010, *aff'd* 436 F. App'x 496 (6th Cir. 2011); *see also, e.g.*, *Lonardo*, 706 F.Supp. 2d at 800-02 (rejecting the CCAF's approach as being the same argument rejected by the Second, Ninth, and Eleventh Circuits (*citing Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2nd Cir. 2007); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295 (11th Cir. 1999)).

The CCAF's position also directly conflicts with *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980), in which the Supreme Court upheld a fee award based on the total available funds because "[t]heir right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created." *Id.* The Court continued, saying the "available benefit is a benefit, and as a corollary to that principle, that an important aspect of the Court's

responsibility in evaluating the Settlement Agreement is to ensure that class counsel is fairly compensated for the work done and the result achieved." *Id.*

Blackman, with no support, argues that *Boeing* has been overruled or superseded.[21] Instead, courts around the country continue to rely on *Boeing* when preparing the common fund analysis. *See, e.g.*, *Chehalem Phys. Therapy, Inc. v. Coventry Health Care, Inc.*, No. 3:09-CV-00320, 2014 U.S. Dist. LEXIS 122359, at *13 (D. Ore. Sept. 3, 2014); *Kiefer v. Moran Foods, LLC*, No. 12-CV-756, 2014 U.S. Dist. LEXIS 106924, 3882504, at *51-52 (D. Conn. Aug. 5, 2014).

The district court here took a more conservative approach than *Boeing* authorizes using the "mid-point between the Available Benefit and the Actual Payment." *See* R&R, RE 141, Page ID #2874. This same approach was used in *Lonardo*, 706 F.Supp. 2d at 801-02, and *Physicians of Winter Haven LLC v. Steris Corp.*, No. 1:10 CV 264, 2012 U.S. Dist. LEXIS 15581, at *24-29 (N.D. Ohio Feb. 6, 2012).

---

[21] The CCAF argues that *Boeing* was superseded by the 2003 Amendments to Fed. R. Civ. P. 23 and the Class Action Fairness Act in 2005. However, the CCAF provides no explanation for this conclusion, and, aside from citation to a law review article and an irrelevant case, provides no authority whatsoever for this proposition. The CCAF also argues that *Boeing* only applies to litigated fee disputes and to actual common fund cases, as opposed to "constructive common fund" cases, with no explanation as to why the *Boeing* principle should function in this bizarre manner. These arguments are unsupported, inconsistent with the cases cited above, and irrelevant because the district court here was only performing a common fund cross check.

Regarding the actual calculation of the cross-check two issues warrant mention.  First, despite Blackman's continued reference to "$15,500,430," the total available benefits to the Class equals $17,000,515.  *See* Plaintiffs' Response to Objections to the R&R, RE 144 at fn. 2 and 10, Page ID # 2928 and 2936.

Second, Blackman contends that it was "error as a matter of law" for the District Court to include the $500,000 payment to the Claims Administrator as a class benefit.  *See* Blackman Brief, Doc. No. 20, at 33.  Blackman's only support for this statement is the previously distinguished and irrelevant *Redman* case. Moreover, even assuming *Redman* was relevant, its holding on this issue conflicts with this Circuit's ruling in *Van Horn,* 436 F. App'x at 501.  Regardless, subtraction of the $500,000 from the cross-check would not materially affect the mid-point analysis because the calculation still returns attorneys' fees equaling about 20% of the cross-check fund.

The district court did not abuse its discretion because the common fund cross check was unnecessary, and it was applied consistent with precedent.

### D.     Rejection of Zik/Hearon's fee request was appropriate because the objections provided no class benefit.

After extensive briefing and argument, the district court determined that, "[t]he objectors have not provided any benefit to the Class and therefore are not entitled to any incentives or attorneys' fees."  *See* Opinion and Final Order, RE

146, Page ID #3005. This factual finding should not be disturbed and the application of the law was proper.

Rather than benefiting the Class, the Zik/Hearon Objectors harm the Class by pursuing unmeritorious objections and appeals in pursuit of their own self-interest. As discussed above, attempting to overturn a settlement that pays more than their case's maximum potential recovery per class member is ludicrous. Likewise, the argument that Class Counsel should have negotiated the direct mailing of 606,000 checks to addresses that are up to eight years old is equally misguided.

Zik/Hearon's other assertions are similarly incorrect. For example, Class Counsel's attempts to work with Zik/Hearon to prosecute these actions broke down because Zik/Hearon refused to accept compensation based on a legally supportable position, *i.e..* (1) a lodestar analysis based on the time, effort, and costs, committed to the litigation; or (2) a common-fund approach based on Class Counsel's already overly generous percentage of the Kentucky Class's recovery as compensation for their purported "simply defined contractually based claims" that overlapped with *Gascho's* and *Robin's* claims. This is evidenced in Class Counsel's email of January 23, 2013, showing that Zik/Hearon refused to accept a fee sharing agreement that could be justified in Court by the lodestar or common fund approach. *See* Plaintiffs' Response to Objections, RE 128-10, Page ID #2412.

Instead, Zik/Hearon insisted that they be handsomely compensated for a purported "nationwide" class of all members from 1996 to 2012, despite Gascho's similar claims and the *Robins* decision barring most, if not all, of those claims. While Class Counsel made numerous efforts to bridge the gap, it ultimately became clear that Zik/Hearon would not accept fees proportional to time, effort, or value.[22]

This Circuit's precedent only allows compensation to objectors if "by virtue of their objection" they provided a benefit to the Class. *See Lonardo*, 706 F.Supp. 2d at 803-04 ("Sixth Circuit case law recognizes that awards of attorneys' fees to objectors may be appropriate where the objector provided a benefit to the class by virtue of their objection.") (*citing Bowling*, 102 F.3d at 779 and *Olden*, 294 F. App'x. at 221.). Here, after considering the testimony and arguments at the Fairness Hearing and upon conclusion of all briefing, the district court determined that Zik/Hearon provided no benefit to the Class. This decision was neither clearly erroneous nor a clear error in judgment. Thus, Zik/Hearon's attempts to secure any fee award should be rejected.

---

[22] Similarly, Class Counsel's offer to share its fee with Zik/Hearon was premised on the assumption that while fees were capped, significant work remained to secure preliminary and final approval. In exchange for the generous offer that almost fully compensated Zik/Hearon for its lodestar amount, Zik/Hearon would have been required to assist in the substantial burden of securing preliminary and final approval, and in dealing with any appeals. Zik/Hearon rejected this offer.

## <u>CONCLUSION</u>

This Court should affirm.

Respectfully submitted,

s/ Thomas N. McCormick
Thomas N. McCormick  (0075496)
tnmccormick@vorys.com
Kenneth J. Rubin  (0077819)
kjrubin@vorys.com
VORYS, SATER, SEYMOUR AND
PEASE LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Telephone:  (614) 464-6400
Facsimile:   (614) 464-6350

*Attorneys for Plaintiffs*

s/ Mark H. Troutman
Gregory M. Travalio  (0000855)
gtravalio@isaacwiles.com
Mark H. Troutman  (0076390)
mtroutman@isaacwiles.com
ISAAC WILES BURKHOLDER &
TEETOR, LLP
Two Miranova Place, Suite 700
Columbus, Ohio 43215
Telephone: (614) 221-2121
Facsimile:   (614) 365-9516

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE WITH
## FED. R. APP. P. 32(A)(7)(C)

I hereby certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B). According to this firm's word processing system, Microsoft Word, there are 12,586 words in the foregoing brief, excluding the corporate disclosure statement, table of contents, table of citations, statement regarding oral argument, this certificate, the title page, and the addendum.

I further certify that this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Times New Roman typeface and therefore complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6).

*s/ Mark H. Troutman*
Mark H. Troutman  (0076390)
mtroutman@isaacwiles.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2014, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  The parties may access this filing through the Court's system.

*s/ Mark H. Troutman*
Mark H. Troutman  (0076390)
mtroutman@isaacwiles.com

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**
**PURSUANT TO 6 CIR. R. 30(G)**

*Gascho et al v. Global Fitness Holdings, LLC*, Case No. 2:11-cv-00436,
United States District Court for the Southern District of Ohio

| RECORD ENTRY NO. | DOCUMENT | PAGE ID # |
|---|---|---|
| 56 | Order | 890-93 |
| 63 | Order | 1054-55 |
| 68 | Order | 1142-43 |
| 71 | Order | 1240-43 |
| 72 | Order | 1244-45 |
| 75 | Order | 1274-75 |
| 77 | Order | 1285 |
| 78 | Order | 1286-87 |
| 79 | Order | 1288-89 |
| 80 | Continued Preliminary Pretrial Order | 1290-92 |
| 87 | Order | 1328 |
| 97-2 | Joint Motion for Preliminary Approval | 1526-27 |
| 114 | Plaintiffs' Motion for Enhancement Payments and Attorneys' Fees | 1854-57 |
| 118 | Zik/Hearon Objections | 1918 |

| 125 | Defendant's Motion to Strike Objection | 2122 |
|------|------|------|
| 128 | Plaintiff's Response to Objections | 2258, 2265-68 |
| 128-10 | Plaintiffs' Response to Objections | 2412 |
| 132 | Joint Motion for Final Approval | 2446 |
| 132-3 | Declaration of Jeffrey Dahl | 2483 |
| 139 | Transcript of Final Fairness Hearing | 2680-2792 |
| 140 | Second Supplemental Declaration of Jeffery Dahl | 2797 |
| 141 | Report and Recommendation | 2799-2877 |
| 144 | Plaintiff's Response to Objections to the R&R | 2928, 2936-37, fn. 2, 10 |
| 144-2 | Plaintiff's Response to Objections to the R&R | 2976 |
| 146 | Opinion and Final Order | 2996-3005 |

# **ADDENDUM**

No addendum required.